UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MIRZA M. AKRAM,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No. CV08-993-MJP-JPD<br>CR04-399-MJP-1<br><br>REPORT AND RECOMMENDATION |

## I. INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Mirza M. Akram, a federal inmate proceeding *pro se*, has filed a motion pursuant to 28 U.S.C. § 2255, Dkt. No. 1, which seeks to correct, vacate or set aside the 18-month sentence imposed following his conviction for 23 counts of food stamp and wire fraud. Respondent has filed an answer to Petitioner's motion, Dkt. No. 17, to which Petitioner has replied, Dkt. No. 30. After careful consideration of the motion, the government's response, Petitioner's reply, all governing authorities, and the balance of the record, the Court recommends that the motion be DENIED and this case DISMISSED with prejudice.

REPORT AND RECOMMENDATION
PAGE - 1

## II. FACTS AND PROCEDURAL HISTORY

A. Petitioner's Indictment

Petitioner was the owner of Continental Spices, a Halal grocery store, in Everett, Washington. On July 9, 2004, the store was set ablaze, and Petitioner was subsequently indicted for conspiracy to commit arson and arson. CR Dkt. No. 166.[1] During the course of the arson investigation, investigators discovered evidence that Petitioner had committed food stamp and wire fraud at his grocery business. Consequently, Petitioner was charged with 23 counts of food stamp and wire fraud in a superseding indictment. *Id.*

Count 1 of the Third Superseding Indictment charged Petitioner with wire fraud, in violation of 18 U.S.C. § 1343. *Id.* at 1-3. Count 1 alleged that Petitioner had defrauded the food stamp program by allowing customers at his store to redeem food stamps for cash and non-food items, and that Petitioner charged customers 15-20% of the value of the food stamps that were illegally redeemed. *Id.* Count 1 also alleged that Petitioner presented, or caused food stamp recipients to present, more than $30,000 of food stamps for redemption for cash or for items other than food. *Id.* at 3.

Counts 2 through 11 of the Third Superseding Indictment each charged Petitioner with food stamp fraud, in violation of 7 U.S.C. § 2024(c). *Id.* at 3-4. Each of the 10 counts alleged a specific transaction in which Petitioner had defrauded the food stamp program by presenting for redemption food stamps, each belonging to a different food stamp program beneficiary, knowing that the food stamps were not used to purchase eligible food. *Id.*

Counts 12 through 23 each charged Petitioner with wire fraud, in violation of 18 U.S.C. § 1343. *Id.* at 4-6. The 12 counts were based upon transactions in which Petitioner defrauded two of the ten food stamp beneficiaries identified in Counts 2 through 11. Specifically, the 12 counts alleged specific wire transactions in which Petitioner had defrauded the food stamp

---

[1] "CR Dkt. No. __" refers to docket entries in Petitioner's criminal District Court case, CR04-399-MJP-1. CR Dkt. No. 166 is Petitioner's Third Superseding Indictment.

REPORT AND RECOMMENDATION
PAGE - 2

beneficiary by charging his or her food stamp account multiple times (six charges for each of the two beneficiaries) for a single purchase. *Id.*

B. Petitioner's Trial

Petitioner moved to sever the arson charges from the food stamp and wire fraud charges. The district court, by order dated January 9, 2006, severed the two groups of charges. CR Dkt. No. 83. On July 18, 2006, Petitioner went to trial on the food stamp and wire fraud charges included in the Third Superseding Indictment.[2] CR Dkt. No. 215.

At trial, the government presented testimony from ten different customers of Continental Spices. Each of the ten customers' testimony was the basis for one of Counts 2 through 11 of the Third Superseding Indictment, each of which charged Petitioner with a transaction in which he redeemed food stamps for cash or a non-food item. Most of the customers testified through interpreters, and Afifi Durr, who has served as an interpreter since 1979, served as the Arabic interpreter at the trial. CR Dkt. No. 178 at 12.

Each of the ten customer-witnesses identified Petitioner in court. Tr. at 177, 203, 229, 263, 283, 299, 380, 415, 433, 464.[3] However, one of the ten witnesses, Hend al-Mansouri, when asked whether she remembered who ran the store, responded, "I know -- I can recognize him if I see him." Tr. at 298-99. When Ms. al-Mansouri was then asked if she saw the person who operated Continental Spices in the courtroom, she initially responded, "I don't know." Tr. at 299. Ms. al-Mansouri was then asked whether she remembered the person's ethnicity, and she responded: "Yes, he is over there. Because the computer is in my face I cannot see him very well." Tr. at 299. Ms. al-Mansouri was then asked what Petitioner was wearing, and she

---

[2] Petitioner's eventual conviction and sentence on the conspiracy to commit arson charge is not being challenged in this habeas action, as the Court dismissed without prejudice Petitioner's collateral challenge of that conviction as premature. *See* Dkt. No. 14.

[3] "Tr. at _" refers to the transcript of Petitioner's trial, which is available at CR Dkt. Nos. 273, 274, and 332-334.

REPORT AND RECOMMENDATION
PAGE - 3

described Petitioner's clothing. Tr. at 299. Counsel for the government then asked that the record reflect that Ms. al-Mansouri had identified Petitioner. *Id.*

At that moment, defense counsel asked for a sidebar. *Id.* Defense counsel noted that he believed the interpreter Ms. Durr had said something to Ms. al-Mansouri after her initial statement that she did not know whether she saw Petitioner in the courtroom and before Ms. al-Mansouri identified Petitioner. Tr. at 299-300. The Honorable Marsha J. Pechman, who was presiding, noted that she observed Ms. Durr point towards the defense table, and that the computer screen could block the view from the witness stand to the defense table, as Ms. al-Mansouri had stated. Tr. at 300. Defense counsel asked that Ms. Durr be removed as an interpreter and that Ms. al-Mansouri's prior in-court identification of Petitioner be stricken. *Id.* Judge Pechman directed the parties to find and use a different interpreter for the remainder of the trial, and allowed defense counsel to cross-examine Ms. al-Mansouri with the new interpreter concerning Ms. al-Mansouri's prior in-court identification of Petitioner. Tr. at 302-04.

Walid Farhoud served as the new Arabic interpreter, and he performed all subsequent Arabic interpretation during the trial, including interpreting for the remainder of Ms. al-Mansouri's testimony. During that testimony, Ms. al-Mansouri was asked by the government, "How sure are you that [Petitioner] is the person who you would interact with at the Halal store," and she responded, "I know him." Tr. at 354. According to food stamp redemption records, Ms. al-Mansouri shopped at Continental Spices on 19 different occasions during the time period that Petitioner operated the store. Defense counsel also cross-examined Ms. al-Mansouri briefly concerning her prior in-court identification of Petitioner. Tr. at 363. Defense counsel asked if she knew whether Petitioner was present in court, to which Ms. al-Mansouri responded, "I just saw him now. He is here." *Id.* Ms. al-Mansouri was also asked if someone pointed her attention to Petitioner, and she responded, "No." *Id.* Petitioner's trial counsel did not pursue the matter further.

REPORT AND RECOMMENDATION
PAGE - 4

In addition to in-court identification of Petitioner, each of the ten customer-witnesses testified that it was Petitioner who had allowed the witness to redeem food stamps for cash or non-food items. Tr. at 180-82, 203-08, 230-33, 264-68, 284-86, 354-356, 381-85, 415-18, 434-37, 468-71. Each of the ten witnesses also testified that Petitioner kept a portion of the value of the food stamps that were unlawfully redeemed for cash or non-food items. Tr. at 178-82, 204-07, 230-33, 265-68, 284-86, 354-56, 382-85, 417-18, 434-37, 468-71.

In addition, two of the customer-witnesses (one of whom was Ms. al-Mansouri) testified about instances in which Petitioner made multiple $50 charges to their food stamp accounts at Continental Spices. Tr. at 286-91, 356-58. Both witnesses testified that they did not ask Petitioner to make the multiple $50 charges, and that Petitioner represented to them that their electronic benefit transfer (EBT) cards were not working and that he therefore needed to run their cards through the EBT machine multiple times. *Id.*

C. Petitioner's Conviction and Sentence

On July 25, 2006, the jury found Petitioner guilty on all 23 counts of food stamp and wire fraud. CR Dkt. No. 225. On January 4, 2007, Petitioner was sentenced to 18 months' imprisonment and two years of supervised release. CR Dkt. Nos. 249, 250.

D. Direct Review

Petitioner filed a notice of appeal from the Judgment. CR Dkt. No. 251. On February 21, 2007, Petitioner went to trial again on a charge of conspiracy to commit arson.[4] Petitioner waived his right to a jury, and the case was tried to Judge Pechman, who found Petitioner guilty. CR Dkt. No. 270.

Prior to his sentencing on the conspiracy to commit arson conviction, Petitioner attempted to cooperate with the government, and he gave a proffer in which he admitted that he had recruited someone to burn Continental Spices and implicated others in the arson

---

[4] Petitioner's first trial on the arson-related charges ended in a hung jury and mistrial.

conspiracy. Petitioner then entered into an Agreement with the government under which he agreed to dismiss his pending appeal of his food stamp and wire fraud convictions and to waive any appeal of his conspiracy to commit arson conviction. CR Dkt. No. 282. Under the Agreement, in return for Petitioner's cooperation, waiver of appeal, and dismissal of his pending appeal, the government agreed to recommend that Petitioner receive a downward adjustment for acceptance of responsibility for his sentence for his conspiracy to commit arson conviction.[5] *Id.* The Agreement, which Petitioner signed, stated that "Defendant agrees that Defendant has entered into this Agreement freely and voluntarily, and that no threats or promises, other than the promises contained in this Agreement, were made to induce Defendant to enter into this Agreement." *Id.* Thereafter, in accordance with the Agreement, Petitioner filed a motion to dismiss his appeal of his food stamp and wire fraud convictions, which the Ninth Circuit granted and dismissed the appeal. *United States v. Akram*, Case No. 07-30013, Dkt. No. 9 (9th Cir. July 2, 2007).

### E. Collateral Review

Petitioner filed the instant § 2255 motion for a writ of habeas corpus on June 23, 2008. Dkt. No. 1. Petitioner is presently incarcerated in the Federal Correctional Institution in Safford, Arizona. His projected release date is December 24, 2010. *Id.*

## III. DISCUSSION

The sole basis for habeas relief regarding Petitioner's food stamp and wire fraud convictions is the action of the interpreter Ms. Durr pointing Ms. al-Mansouri's attention to the defense table after Ms. al-Mansouri indicated that she did not know if she saw Petitioner in the courtroom. Dkt. No. 1 at 5.

---

[5] The government did recommend a downward adjustment, and Petitioner received a 51-month sentence, which was at the low-end of the Sentencing Guidelines' range found by the Court. Dkt. Nos. 280 at 2; 315 at 27.

A.  Petitioner's Claim is Procedurally Barred.

It is well-established that, in general, a habeas petitioner procedurally defaults on a claim if he failed to raise that claim on direct appeal. *See, e.g., United States v. Braswell*, 501 F.3d 1147, 1149-50 (9th Cir. 2007); *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993); *Torres v. United States*, 469 F.2d 651, 652 (9th Cir. 1972); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003). If a petitioner procedurally defaults on a claim, he will be barred from presenting that claim in a subsequent federal habeas action unless he can meet one of the exceptions excusing procedural default: cause and prejudice, *see United States v. Frady*, 456 U.S. 152, 167-68 (1982); fundamental miscarriage of justice, *Murray v. Carrier*, 477 U.S. 478, 495 (1986); or a waiver of the default by the government, *Franklin v. Johnson*, 290 F.3d 1223, 1229-30 (9th Cir. 2002). Here, Petitioner dismissed his appeal in accordance with his signed Agreement with the government. *See* CR Dkt. No. 282. Accordingly, he failed to raise his claim of error regarding the interpreter's conduct on direct appeal. As a result, Petitioner is procedurally barred from presenting his claim unless he can meet one of the three exceptions.

Petitioner asserts that he meets the cause and prejudice exception because his counsel for his second trial on the arson-related charges, John Henry Browne, "threatened," "bullied," and "pressured" him, and "forced [Petitioner] to take actions against his will," telling Petitioner that he would quit as his counsel if Petitioner did not enter into the Agreement with the government that, in part, required Petitioner to dismiss his appeal of his food stamp and wire fraud convictions. Dkt. Nos. 1-2 at 6-7; 10 at 1-2; 30 at 6-9. However, Petitioner's bare, unsupported allegations in this habeas action cannot overcome the evidence in his criminal case that his dismissal of his appeal was voluntary and deliberate, and, most importantly, was knowingly done in exchange for a significant benefit; specifically, a recommended reduction in his sentence for his conviction for conspiracy to commit arson. The record demonstrates that Petitioner brought his appeal to a halt not because of "some objective factor external to the defense" that impeded him, or through fault of his counsel, see *Cook v. Schriro*, 538 F.3d 1000,

1027 (9th Cir. 2008), but because of a considered, tactical decision to attempt to obtain a lighter sentence for his conspiracy to commit arson conviction, which he was able to achieve.

The record reveals that based on, among other things, Petitioner's agreement to dismiss his appeal relating to his food stamp and wire fraud convictions, the government took the unusual step of recommending a downward adjustment for acceptance of responsibility, *after* Petitioner and the government had gone through three trials. This recommendation resulted in a considerable benefit for Petitioner: he received a 51-month sentence for his conspiracy to commit arson conviction, to be served concurrently with his 18-month sentence for the food stamp and wire fraud convictions, when he was potentially facing a Sentencing Guidelines range of 78-97 months' imprisonment.[6] Therefore, Petitioner's strategic decision to enter into the Agreement with the government resulted in a two to four year overall reduction in his sentence. Moreover, the record belies Petitioner's current contention that his dismissal of his appeal was not voluntary: Petitioner's signed Agreement with the government states that he entered into the Agreement "freely and voluntarily," and that no threats were made to induce him to enter into the Agreement. CR Dkt. No. 282. Further, at Petitioner's sentencing hearing, the district court reminded Petitioner that he had "waived several of [his] appellate rights," and when Petitioner was subsequently invited to respond, he not once indicated that he had been forced to do so against his will. CR Dkt. No. 315 at 34-35.

Finally, even if Petitioner could show cause for his failure to raise his claim of error on appeal, he cannot show prejudice because his 18-month sentence for the food stamp and wire fraud convictions is being served concurrently with his much longer 51-month sentence for his conspiracy to commit arson conviction. CR Dkt. No. 286 at 2. Accordingly, because Petitioner must in any event serve his 51-month sentence for conspiracy to commit arson, his dismissal of his appeal relating to his concurrent 18-month sentence for his food stamp and

---

[6] This is the range for an offense level of 28 and Criminal History Category I. *See* UNITED STATES SENTENCING GUIDELINES MANUAL § 5A (2006).

REPORT AND RECOMMENDATION
PAGE - 8

wire fraud convictions, whatever the cause, could not have resulted in any additional jail time for Petitioner. As a result, Petitioner cannot meet the cause and prejudice exception, and he is procedurally barred from presenting his claim of error regarding the interpreter's conduct in a habeas action.

B.  Petitioner's Claim is Meritless.

Even if Petitioner's claim was not procedurally barred, his claim of error is meritless because he cannot demonstrate that any error occurred. Ms. al-Mansouri initially testified regarding Petitioner that "I can recognize him if I see him." Tr. at 298-99. Indeed, the evidence at trial showed that Ms. al-Mansouri had shopped at Continental Spices on 19 different occasions during the time period that Petitioner operated the store. She then testified that she did not know if Petitioner was in the courtroom, but then identified him, explaining that "the computer [screen] is in my face I cannot see him very well." Tr. at 299. While the interpreter Ms. Durr pointed in the direction of the defense table after Ms. al-Mansouri initially said that she did not know whether she saw Petitioner in the courtroom, there is no showing that the interpreter's conduct had any effect on Ms. al-Mansouri's ability to identify Petitioner. To be sure, when Ms. al-Mansouri was later asked by the government, with a new interpreter that was ordered by the trial court, "How sure are you that [Petitioner] is the person who you would interact with at the Halal store," she responded, "I know him." Tr. at 354. The trial court also allowed defense counsel to cross-examine Ms. al-Mansouri on her prior in-court identification of Petitioner with the new interpreter. Defense counsel asked Ms. al-Mansouri if she knew whether Petitioner was present in court, and she responded, "I just saw him now. He is here." Tr. at 363. Ms. al-Mansouri was also asked if someone pointed her attention to Petitioner, and she responded, "No." *Id.* Defense counsel declined to pursue the matter further. On this record, Petitioner cannot demonstrate that but for the interpreter's conduct, Ms. al-Mansouri could not have identified Petitioner in court. The record supports the

conclusion that Ms. al-Mansouri could have identified Petitioner without delay, but that the computer screen initially blocked her view of him at the defense table.

In any case, even assuming that the interpreter's conduct constituted error, the error was harmless and does not warrant habeas relief. A nonconstitutional error is harmless if "it is more probable than not that the error did not materially affect the verdict." *United States v. Morales*, 108 F.3d 1031, 1040 (9th Cir. 1997). Also, a constitutional error will not warrant habeas relief unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). Here, under either standard, any error that conceivably occurred was harmless and does not warrant habeas relief because, unlike, for example, a robbery that was committed by someone in the dark of the night, the perpetrator's identity was not an issue at trial. It is undisputed that Petitioner was the operator of Continental Spices, and no less than nine witnesses — in addition to Ms. al-Mansouri — so identified him on multiple occasions at trial. *See* Tr. at 180-82, 203-08, 230-33, 264-68, 284-86, 354-356, 381-85, 415-18, 434-37, 468-71 (Petitioner allowed the witness to redeem food stamps for cash or non-food items); Tr. at 178-82, 204-07, 230-33, 265-68, 284-86, 354-56, 382-85, 417-18, 434-37, 468-71 (Petitioner kept a portion of the value of the food stamps that were unlawfully redeemed for cash or non-food items); *see also* Tr. at 286-91, 356-58 (Petitioner made multiple $50 charges to food stamp accounts without permission). That Petitioner's identity was not an issue at trial is confirmed by the fact that his defense counsel did not even raise the issue of identity in his closing argument: defense counsel's closing argument assumed that it was the propriety of Petitioner's conduct that was at issue, not that of some other individual. *See* Tr. at 615-638 (*e.g.*, Petitioner was an unsophisticated and disorganized businessman, but he did not engage in criminal conduct).

Moreover, any claimed error could not have affected or influenced the jury's verdict because of the immediate corrective measures taken: the court directed the parties to find and use a different interpreter for the remainder of the trial, and allowed defense counsel to cross-

REPORT AND RECOMMENDATION
PAGE - 10

examine Ms. al-Mansouri with the new interpreter concerning Ms. al-Mansouri's prior in-court identification of Petitioner. Tr. at 302-04. Defense counsel did cross-examine Ms. al-Mansouri about her identification of Petitioner very briefly, apparently satisfied with her responses.

## IV. CONCLUSION

For the foregoing reasons, this Court recommends that Petitioner's § 2255 motion be DENIED and this case DISMISSED with prejudice. A proposed Order accompanies this Report and Recommendation.

DATED this 17th day of June, 2009.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge